Senator G. GRIFFIN and wife, Annie May Griffin, Appellants,

v.

O. E. STEWART and National Farm Life Insurance Company, Appellees.

No. 7071.

Court of Civil Appeals of Texas.

Amarillo.

June 26, 1961.

Rehearing Denied Sept. 5, 1961.

James F. Moore, Lubbock, for appellants.

Crenshaw, Dupree & Milam, H. E. Griffith, Lubbock, for appellees.

CHAPMAN, Justice.

This case originated in the court below by petition to restrain O. E. Stewart, substitute trustee for National Farm Life Insurance Company, a corporation domiciled in Fort Worth, from proceeding to sell under authority of its Deed of Trust, Lot 6 in Block 23 of the F. E. Wheelock Second Addition to the city of Lubbock.

Appellants obtained a temporary restraining order without notice and appellees agreed it might remain in effect until a hearing on its merits.

Appellants sought to cancel certain liens held by appellees against their property originating in money advanced by J. E. Maisen for improvements, for money expended for a vendor's lien note owed by appellants and for other obligations against them.

Appellees were not parties to any of the transactions in which the original note or renewal notes and the liens securing same were given. Appellee, National Farm Life Insurance Company, was transferee or assignee of the last renewal note and Deed of Trust securing same dated December 1, 1955, transferred to it as of December 20, 1955.

The case was tried to a jury and after appellants had concluded their testimony appellees' motion for instructed verdict was granted and judgment rendered awarding judgment for appellees on their cross action in the amount of $3,268.70, the balance due on the $3,822.36 note of December 1, 1955, with interest, attorneys fees, etc. and foreclosure of the Deed of Trust lien of even date, and denying appellants' contentions hereinafter mentioned. It is from this judgment that appellants have perfected their appeal.

Appellants by brief have raised questions of usury, of improper acknowledgements of instruments, the homestead question and have asserted the record raised fact issues on these questions and upon the question of whether appellee, National Farm Life Insurance Company, was a holder in due course. Because the points are all so closely related to each other from the record made we shall attempt to make disposition of the case without discussing each point separately.

The first hurdle with which appellants are faced in their effort to reverse the

trial court is the innocent purchaser or holder in due course obstacle.

■ The note of December 1, 1955 above described and the Deed of Trust lien securing same are both complete and regular upon their faces, were transferred and assigned before the first installment upon the note became due, and there is not any testimony that the assignment was in bad faith and without value or that assignee-appellee had any notice of infirmity in the instruments or defect in the title of the person negotiating them, J. E. Maisen. Under Art. 5935, Sec. 52, Vernon's Ann.Texas Civ.St. the general rule is that a holder in due course is a holder who has taken the instrument under the conditions just stated. This court has held: "Every holder of a negotiable instrument, which at the time of its acquisition was complete and regular on its face, is deemed prima facie to be a holder in due course." Full Gospel Assemblies in Christ et al. v. Montgomery Ward & Co., 237 S.W.2d 657, 658 (Writ dismissed).

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." [1]

"The ordinary rule as to notice does not apply to a purchaser for valuable consideration before maturity.[2] The test in such cases is good faith [3] and not diligence [4] or negligence.[5] "

■ Appellants contend the provisions of the Deed of Trust of March 1, 1952, [one of the liens constituting the group of liens culminating in the $3,822.36 note sued upon] constituted notice to appellees sufficient to advise them that advances were made for purposes other than matters upon which a valid lien might be taken upon a homestead. To the contrary we believe the opposite would be true. That instrument provides the $1,600 note it secures, "takes up and extends but does not distinguish a balance of $650 which is this day transferred from vendor's lien from C. W. Pearce, Trustee, and to this amount is added $220 to the Royal Finance Co.; $252 due the Family Finance Co.; $64 due the Plains Investment Co.; $209.44 outstanding balance on street paving due the city of Lubbock and $204.56 in various other cash items; all of which are paid from proceeds of this loan and combined into the total of $1,600 which is this day advanced."

A mere cursory glance at such obligations to be paid from proceeds of the loan would immediately suggest to one in the business of loaning money that the property securing such loan was not a homestead and that any person or institution would not have loaned money with which to pay such items if the property securing the loan was a homestead. Especially would this be true when the Deed of Trust securing the note sued upon itself stated the property "forms no part of any property by them owned, used, occupied or claimed as their homestead or as exempt from forced sale under the laws of the State of Texas, and disclaim and renounce all and every claim thereto under any such law or laws."

■■ Though we believe what we have already said clearly disposes of the case because of the lack of probative evidence to overcome the presumption of holder in due course on the part of the National Farm Life Insurance Co., we have no hesitancy in saying there is not any proof of probative force in the record to show

---

1. Art. 5935, Sec. 56, V.A.T.S.

2. 9 T.J.2d Bills and Notes, Section 98, p. 111 and cases there cited.

3. Id. and cases cited.

4. Id. and cases cited.

5. Id. and cases cited.

usury in any of the transactions. None of the instruments upon their faces provide for the payment of more than the legal rate of interest. Under such statement of facts the burden was on those pleading usury to show that there existed some agreement, device or subterfuge to charge usury, and that both parties had that purpose in contemplation. 42 T. J. Usury Sec. 84, p. 984; Shipman et al. v. Wright, Tex.Civ.App., 3 S.W.2d 519 (wr. ref.). It has been said: "The burden of proving that a transaction is infected with usury rests upon him who attacks it, and that fact must be established by at least clear and convincing evidence." Great Southern Life Insurance Co. v. Williams, Tex.Civ.App., 105 S.W. 2d 277, 280 syl. 2 (N.W.H.) and cases there cited. We believe this would require at least a preponderance of the evidence, which is clearly not present in this case.

Appellants also assert appellees had notice of defects in the instrument because of the statement in the March 1, 1952 Deed of Trust concerning paving liens because of the law with reference to interest charged for the payment of taxes and paving liens. They urge Art. 1090, V.A. C.S., as a bar to charging ten percent interest on the note here in controversy.

■ Art. 1090 is under the "Cities, Towns And Villages" title and gives such governing bodies power to charge at a rate of interest not to exceed eight per cent on assessments by ordinance, against property owners for costs of sidewalks, curbs, etc. That article has nothing to do with the interest charged on a note whose obligation consists partly of indebtedness for paving. The eight per cent condition is between the municipal corporation and the owner of the property against which the paving assessment has been made. The ten per cent interest instrument here under consideration involved a third party, who has the right under Art. 5071, V.A. C.S., to charge ten per cent per annum interest. That article provides in part:

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract; * * *."

■ Art. 7345a is also urged as a bar to charging ten per cent interest on the notes here involved. That statute limits the interest to eight per cent where a statutory tax lien is transferred. It has no application to the facts of this case. There was no transfer of the tax lien here as provided in Sec. 2 of the article named. There was no necessity for obtaining a transfer of the tax lien since the holder of the note already has a Deed of Trust and Mechanics and Materialman's Lien given him to secure any payment of taxes in default made by the holder of the note. Art. 7345a does not purport to restrict private contracts and agreements with respect to payments of taxes, but merely regulates the transfer of a tax lien by the tax officer. Dotson et ux. v. Pahl et al., Tex.Civ.App., 206 S.W. 2d 272, 273. Additionally, appellants did not plead or prove that appellees had any notice or knowledge of usury in the transaction, which is essential in order to prevail against a holder in due course. Davis v. Boling, Tex.Civ.App., 340 S.W.2d 331; Mossler Acceptance Co. v. Kieke, Tex.Civ. App., 244 S.W.2d 569.

This leaves only the alleged question of improper acknowledgements of the instruments that have not been discussed.

■ It appears to be settled law in Texas that to impeach a notary's certificate the evidence must be clear, cogent and convincing beyond reasonable controversy. Arkansas, Louisiana Gas Co. v. Max et al., Tex.Civ.App., 118 S.W.2d 383 (Wr. dismissed); Hardin v. State et al., Tex.Civ. App., 254 S.W.2d 898; Blankenship et al. v. Lusk et ux., Tex.Civ.App., 77 S.W.2d 341.

In Arkansas, Louisiana Gas Co. v. Max et al., supra, it was also held that to meet

the burden imposed by law in corroborating the persons attempting to impeach their acknowledgement their testimony must be corroborated by evidence of cogency and weight. In Cockerell v. Griffith, Tex.Civ.App., 255 S.W. 490, 493 (N.W.H.) it was held that slight corroboration of the testimony of the acknowledging party is insufficient to falsify the certificate. That case also quotes with approval from another authority [Kerr v. Russell, 69 Ill. 666] which said:

"It shocks the moral sense of community to say the unsupported testimony of an interested witness, who sees a fortune in his success, shall destroy the deliberate act of an officer appointed by law to do the act he certifies, under the solemn sanctions of an oath, he has done. Such is not the law, such is not justice, and such a rule would throw land titles into chaos."

The only corroborative evidence of Senator G. Griffin or his wife, Annie May, that we would consider of any probative value concerns plaintiffs' exhibits 10 and 11, the $3,500 installment note and Deed of Trust of July 1, 1953. They testified they were not in Lubbock County that day. Their daughter, a maid in the home of counsel for appellants, and her husband also testified appellants were in another part of Texas on July 1, 1953. We believe it is unnecessary for us to pass on the question of whether the testimony of the daughter and her husband constitutes that cogency and weight referred to in the Arkansas, Louisiana Gas Co. case, supra, to corroborate appellants' testimony for the reason that there is not any proof whatever of probative value that National Farm Life Insurance Co. was not a holder in due course. Additionally, Senator G. Griffin admitted that both he and his wife signed the note and Deed of Trust of December 1, 1955 sued upon.

With all the transactions shown in this record of notes, Mechanics and Material-man's Liens, Deeds of Trust Liens and the various renewals thereof, we can understand how the two appellants here might have been confused. We can also understand how they might have thought they had their obligation nearer discharged than the record shows. With ten percent interest on the various transactions, some defaults on the payments from time to time, and the taxes, insurance, and the various other obligations above shown included in at least one of the notes, it is understandable that they thought they did not owe as much as they obviously did. However, we believe the trial court properly instructed a verdict for National Farm Life Insurance Co. the holder in due course of the notes sued upon. Accordingly, the judgment of the trial court is affirmed except as to the lien given for attorneys' fees, and as to reformed affirmed.